AO 106 (Rev. 04/10) Application for a Search Warrant          AUTHORIZED AND APPROVED/DATE: **ELIZABETH JOYNES** *Digitally signed by ELIZABETH JOYNES Date: 2023.02.01 15:14:52 -06'00'*

# UNITED STATES DISTRICT COURT
## for the
### Western District of Oklahoma

In the Matter of the Search of )
**1217 PEBBLE POND DRIVE, Norman, Oklahoma WITH ACCESS AND CONTROL OF A DETACHED GARAGE, AND ALL OUTBUILDINGS, VEHICLES, AND CURTILAGE,** )

Case No. M-23- **52** STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the **Western** District of **Oklahoma**, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B" which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A | Activities relating to material constituting or containing child pornography |

The application is based on these facts:
See attached Affidavit of, which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.



*Applicant's signature*

David A. Garrison, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Feb 1, 2023**

City and state: **Lawton, OK** ~~[redacted]~~

*Judge's signature*

SHON T. ERWIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, David A. Garrison, a Special Agent with the Federal Bureau of Investigation ("FBI"), Oklahoma City, Oklahoma, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent of the FBI since June 2005 and have been assigned to the Oklahoma City Division of the FBI since January of 2013. During that time, I have conducted a wide variety of investigations, including numerous cases involving child pornography and sexual exploitation of children.

2. As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records. This Affidavit is made in support of an application for a warrant to search the entire premises located at **1217 Pebble Pond Drive, Norman, Oklahoma 73072** (hereinafter referred to as "the **SUBJECT PREMISES**"), which is described in detail in Attachment A to this Affidavit, including the residential dwelling, vehicles, curtilage, any persons located on said property, and any computer (as broadly defined in 18 U.S.C. § 1030(e)(1)) or other digital file storage device located there, for the items specified in Attachment B hereto, which constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. § 2252A.

4. This investigation, described more fully below, has revealed that an individual knowingly utilized the BitTorrent peer-to-peer ("P2P") file-sharing network from the **SUBJECT PREMISES**, and a previous address, to advertise, transport, receive, distribute, possess, and/or access child pornography, in violation of 18 U.S.C. § 2252A, and that there is probable cause to

1

believe that evidence, fruits, and instrumentalities of such violations are located at the **SUBJECT PREMISES**.

5. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant.

## TERMS

6. Based on my training and experience, I use the following technical terms and definitions:

   a. An <u>Internet Protocol (IP) address</u> is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static, or long-term, IP addresses. Other computers have dynamic, or frequently changing, IP addresses.

   b. <u>Single-source download</u> applies to a file that is downloaded from one IP address only. In P2P software, users often download different parts of the same file from many other users at once in an attempt to gain the file quicker. A single-source download comes from one user/IP address instead.

## BACKGROUND ON P2P FILE SHARING

7. A growing phenomenon on the Internet is P2P file sharing. P2P file-sharing software is designed to allow users to trade digital files through a worldwide network that is formed

by linking computers together.

8. To access the P2P networks, a user first obtains the P2P software from the Internet. This software is used exclusively for the purpose of sharing digital files. In general, P2P software allows the user to set up file(s) on his/her computer so that the files can be shared with others running compatible P2P software. In essence, a user allows his/her computer to be searched and accessed by other users of the network. If another user finds a file of interest on his/her computer, the other user may download that file. A user obtains files by opening the P2P software on his/her computer and conducting keyword searches of the P2P network. The P2P software then conducts a search of all computers connected to that network to determine whether any files matching the search term(s) are currently being shared by any other user on that network.

9. BitTorrent, one type of P2P software, sets up its searches by keywords, typically on torrent websites. The results of a keyword search are displayed to the user. The website does not contain the actual files being shared, only the file referred to as a ".torrent" file. The user then selects one or more .torrent files from the results for download. The .torrent files contain instructions on how a user can download the file(s) referenced in the torrent. The download of file(s) referenced by the .torrent file is achieved using a BitTorrent client/program, through a direct connection between the computer requesting the file(s) and the computer(s) sharing the actual file(s) (not the .torrent file but the actual files referenced in the .torrent file, using any BitTorrent client/program).

10. For example, a person interested in obtaining images of child pornography would open the BitTorrent website or program on his/her computer and conduct a keyword search for files using a term such as "preteen sex." The results of the search are returned to the user's computer and displayed on the torrent site. The user then selects a .torrent from the results displayed. The

.torrent file is the set of instructions a BitTorrent client/program needs to find the files referenced in the .torrent file. Once the .torrent file is downloaded, it is used by a BitTorrent client/program, previously downloaded and installed by the user, to download the actual files. The actual file(s) are downloaded directly from the computer or computers sharing the file(s). The download is achieved via the Internet. The downloaded file(s) are then downloaded/stored in an area previously designated by the user and/or the software. The downloaded files will remain until moved or deleted.

11. A P2P file transfer is assisted by reference to an IP address, which provides a unique location making it possible for data to be transferred between computers. The computer running the file sharing application, in this case a BitTorrent application, has an IP address assigned to it while it is on the Internet. BitTorrent users are able to see the IP address of any computer system sharing files to them or receiving files from them.

12. Law enforcement officers using BitTorrent log the IP address which has sent the files or information regarding files being shared. Investigators can then search public records, such as the American Registry for Internet Numbers ("ARIN"), that are available on the Internet to determine the Internet service provider who has assigned that particular IP address. Based upon the IP address, investigators can obtain subscriber information from the Internet service provider. The subscriber information identifies the individual to whom the Internet service account is registered.

13. One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel. This means that the user can download more than one file at a time. In addition, a user may download parts of one file from more than one source computer at a time. For example, a BitTorrent user downloading an image file may actually receive parts of the image from multiple

4

computers/sources. The advantage of this is that it speeds up the time it takes to download the file. However, software used by the FBI to download files from P2P networks will only download from a single source, via a direct connection (i.e., a single-source download).

14. The computers that are linked together to form the P2P network are located throughout the world; therefore, the P2P network operates in interstate and foreign commerce. A person who shares child pornography files on a P2P network is hosting child pornography and therefore is promoting, presenting, and potentially distributing child pornography.

15. Even though the P2P network links together computers from all over the world and users can download files, it is not possible for one user to send or upload a file to another user of the P2P network. The software is specifically designed to only allow the download of files that have been selected. A user does not have the ability to send files from his/her computer to another user's computer without his/her permission or knowledge. Therefore, it is not possible for one user to send or upload child pornography files to another user's computer without his/her active participation.

**BACKGROUND OF INVESTIGATION**

16. This case originated on December 13, 2021, when I conducted an online undercover investigation to identify individuals possessing and sharing child pornography on the Internet using the BitTorrent P2P network. I used a P2P file-sharing program that utilizes a single-source download process. Based upon my training and experience, I was familiar with P2P file-sharing, specifically the operation of the BitTorrent network. I directed my focus to a computer using IP address 68.12.73.249 because it was associated with a torrent file that referenced 2303 files, at least one of which had been identified as a file of interest in child pornography investigations.

17. On December 13, 2021, between 1140 and 1228 hours, Central Standard Time, I

completed single-source downloads of approximately 2 files that the device using IP address 68.12.73.249 was making available for others to download on the BitTorrent network. Each of the files was downloaded directly from the device using IP address 68.12.73.249. Based upon my training and experience, I determined the files depict children under the age of eighteen years engaged in sexual acts and/or lascivious exhibitions of the genitals that constitute child pornography as defined by Title 18 U.S.C. § 2256. The two files are described below:

 a.  Filename: Kaari-002.avi
  Description: This video, 27 minutes and 48 seconds long, depicts a prepubescent female with blonde hair in a sitting position, naked, and, during portions of the video, is inserting her fingers into her exposed vagina in a sexually suggestive manner.

 b.  File name: coolgamer9's webcam video September 27, 2011 10_40 PM.flv
  Description: This video, 1 minute and 41 seconds long, depicts a prepubescent female with brown hair and a male of in-determinate age lying on a bed, naked, with the male engaging in vaginal sex by inserting his erect penis into the female's vagina.

18.  Utilizing information provided by the ARIN website, I determined that Cox Communications, Inc. was the Internet service provider for IP address 68.12.73.249. Pursuant to an administrative subpoena, on March 10, 2022, Cox Communications, Inc. provided the following Internet subscriber information for the IP address 68.12.73.249 on the date and times of the downloads described above:

 Name:   George Nelson
 Address:  1621 NW 17th St.
      Oklahoma City, Oklahoma 73106
 Phone:   (405) 274-3706

19.  On April 30, 2022, I conducted another online undercover investigation on a computer using the IP address 68.12.73.249 because it was associated with a torrent file that referenced 2,837 files, at least one of which had been identified as a file of interest in child pornography investigations.

6

20. Between April 6, 2022, 23:58 hours and May 1, 2022, 00:24 hours, Central Daylight Savings Time, I completed single-source downloads of approximately 20 files that the device using IP address 68.12.73.249 was making available for others to download on the BitTorrent network. I was able to download complete pieces from two of those files. Each of the files was downloaded directly from the device using IP address 68.12.73.249. Based upon my training and experience, I determined these files depict children under the age of eighteen years engaged in sexual acts and/or lascivious exhibitions of the genitals that constitute child pornography as defined by Title 18 U.S.C. § 2256. The files are described below:

    a.    Filename: 000007.mpg
Description: This video, 24 seconds long, depicts a prepubescent female lying naked on her front on a bed with a white cover and a white head piece. A child's doll is visible in the background near the bed's headpiece. An adult naked male is standing behind the female, next to the bed, with his erect penis inserted into the female's vagina, engaged in vaginal sex. The adult male is also holding the female's right side with his right hand.

    b.    Filename: 000120.wmv
Description: This video, 15 minutes and 24 seconds long, starts by depicting a prepubescent female, visible from her neck to near the top of her head, performing oral sex on an adult male. She is wearing a black piece of material on her neck and a dark blue beanie cap on her head which covered her eyes. Her mouth is sucking on an adult male's erect penis. The video progresses to showing the female lying on her back, visible from her chest to her mid-thigh with the male's fingers penetrating her exposed vagina. The video ends with the adult male lying down on his back and the female, facing forward away from the camera, visible from the middle of her back down to her buttocks, crouched over the male's erect penis and performing vaginal sex with the male's erect penis inserted into her vagina.

21. Pursuant to an administrative subpoena, on July 14, 2022, Cox Communications, Inc. provided the following Internet subscriber information for the IP address 68.12.73.249 on the date and times of the downloads described above:

    Name:    George Nelson
    Address:    1621 NW 17th St.
        Oklahoma City, Oklahoma 73106
    Phone:    (405) 274-3706

22.  In June of 2022, I conducted physical surveillance at 1621 NW 17th Street, Oklahoma City, Oklahoma 73106 and found no evidence of George Nelson ("Nelson") residing at the listed address. Further investigation indicated Nelson moved to the **SUBJECT PREMISES** in May of 2022. Throughout the summer months of 2022, I attempted to identify the internet service provider for the **SUBJECT PREMISES** in order to identify the assigned IP address for the purpose of identifying current BitTorrent P2P activity. Efforts to identify the internet service provider for the **SUBJECT PREMISES** proved unsuccessful. From May 1, 2022, to the date of the drafting of this Affidavit, no additional BitTorrent P2P activity has been observed in connection to the IP address associated with 1621 NW 17th Street, Oklahoma City, Oklahoma.

23.  On September 15, 2022, I conducted an online undercover investigation on a computer using the IP address 104.181.21.27 because it was associated with a torrent file which referenced 539 files, at least one of which had been identified as a file of interest in child pornography investigations.

24.  On September 15, 2022, between 12:19 and 14:31 hours, Central Daylight Savings Time, I completed single-source downloads of approximately 39 files that the device using IP address 104.181.21.27 was making available for others to download on the BitTorrent network. Each of the files was downloaded directly from the device using IP address 104.181.21.27. Based upon my training and experience, I determined these files depict children under the age of eighteen years engaged in sexual acts and/or lascivious exhibitions of the genitals that constitute child pornography as defined by Title 18 U.S.C. § 2256. Two of the files are described below:

    a.    <u>Filename:</u> "(_pthccenter_)(opva)(2013)Nice11yo Fucks_Masturbates_Beautiful.mpg"
<u>Description:</u>   This video, 1 minute and 27 seconds long, depicts a prepubescent male, wearing no clothes other than a blue shirt pulled up around his shoulders. The prepubescent male is lying on top of a young

8

        female of indeterminate age, wearing no clothing other than a red tank top t-shirt, inside what appears to be a motor vehicle, with the prepubescent male's genitals positioned over the young female's. Later in the video, the young female is shown sitting in the vehicle with her legs spread apart exposing her genitals. She is then showed inserting an object into her vagina.

    b.    Filename: "(Lolita-sf-model) CandyGirls.com-Sasha (12Yo)-Movie n. 02-Hotdog-[Pthc][RU][00.20.02].avi"
Description: This video, 20 minutes and 2 seconds long, depicts a prepubescent female with blonde, shoulder length hair wearing a dark colored "Godzilla" t-shirt and green pants, undress and lay on her back on a bed with an orange covering with her genitals exposed. She proceeds to repeatedly insert a short, cylindrical object into her vagina.

25.    Utilizing information provided by the ARIN website, I determined that AT&T U-verse was the Internet service provider for IP address 104.181.21.27. Pursuant to an administrative subpoena, on December 15, 2022, AT&T U-verse provided the following Internet subscriber information for the IP address 104.181.21.27 on the date and times of the downloads described above:

|   |   |
|---|---|
| Name: | George Nelson |
| Address: | 1217 Pebble Pond Drive |
|   | Norman, Oklahoma 73026-3319 |
| Phone: | (405) 625-2662 |
| Account Status: | Open |
| Account Creation: | May 19, 2022 |

26.    On December 12, 2022, I conducted another online undercover investigation on a computer using the IP address 104.181.21.27 because it was associated with a torrent file which referenced 5,971 files, at least one of which had been identified as a file of interest in child pornography investigations.

27.    On December 12, 2022, between 04:50 and 05:25 hours, Central Standard Time, I completed single-source downloads of approximately 29 files that the device using IP address 104.181.21.27 was making available for others to download on the BitTorrent network. Each of the files was downloaded directly from the device using IP address 104.181.21.27. Based upon

9

my training and experience, I determined these files depict children under the age of eighteen years engaged in sexual acts and/or lascivious exhibitions of the genitals that constitute child pornography as defined by Title 18, U.S.C. § 2256. Two of the files are described below:

    a.    <u>Filename:</u> "Petite brune 5 ans.avi"
<u>Description:</u>  This video, 4 minutes and 30 seconds long, depicts a prepubescent female with short dark hair wearing red striped pajamas and holding up a piece of paper with the phrase, "Mat preteen 4 you" printed on it. The prepubescent female proceeds to undress and sit on top of a bed with a green covering. While seated cross legged on the bed, she inserts a long, pink cylindrical object into her mouth then lays down on the bed with her genitals exposed and repeatedly inserts the object into her vagina. Later in the video, while kneeling on the bed, she places her mouth over the an erect penis of an adult male. Subsequently, with the prepubescent female lying on her back on the bed with her genitals exposed, the adult male inserts his erect penis into her vagina.

    b.    <u>Filename:</u> "NewSugar 07"
<u>Description:</u>  This video, 3 minutes and 33 seconds long, depicts a prepubescent female with blonde hair with the ends tied into ponytails. At times she is wearing blue and white t-shirts with no other clothes visible. At the beginning of the video, she is lying on her back on a pink towel with her legs spread apart and her vagina exposed. An adult hand is visible and, using fingers, further spreads apart the prepubescent female's vagina. The adult hand then inserts its left forefinger into her vagina followed by an erect penis. Later in the video, the prepubescent female is facing the camera at the crotch of an adult male, who is lying on his back, naked from his waist down with his penis exposed. The prepubescent female places her mouth on the erect penis and inserts it inside. At the end of the video, the prepubescent female is lying on her back on a bed with white coverings. She is naked from the waist up. An erect penis is situated over her and ejaculates onto her face.

28.     Pursuant to an administrative subpoena, on December 22, 2022, AT&T U-verse provided the following Internet subscriber information for the IP address 104.181.21.27 on the date and times of the downloads described above:

    Name:                   George Nelson
    Address:                1217 Pebble Pond Drive
                                Norman, Oklahoma 73026-3319
    Phone:                  (405) 625-2662
    Account Status:     Open
    Account Creation:  May 19, 2022

29. I believe that George Nelson currently resides at the **SUBJECT PREMISES**. Investigation revealed that Nelson has an Oklahoma driver's license and, on or about April 29, 2022, I obtained his driver's license photo. On June 17, 2022, I conducted physical surveillance at the **SUBJECT PREMISES** and observed a red 1999 Honda Civic, with Oklahoma license plate GBT437, registered to Nelson. Later during the surveillance, I observed an adult male, matching Nelson's driver's license photograph, exit the front door of the residence to retrieve an empty trash can. A records check revealed vehicle registered to George Nelson at the **SUBJECT PREMISES**.

30. On or about June 22, 2022, law enforcement installed a pole camera, which captures the public view of the **SUBJECT PREMISES**. On January 3 and 10–11, an adult male, matching Nelson's driver's license photograph, was observed at the **SUBJECT PREMISES**. Additionally, on January 11, 2023, physical surveillance observed the 1999 Honda Civic with Oklahoma license plate GBT437, registered to Nelson, parked in the **SUBJECT PREMISES** driveway.

## BACKGROUND ON DIGITAL MEDIA STORAGE DEVICES AND CHILD PORNOGRAPHY

31. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. Other digital media storage devices (e.g., compact disks, digital video disks, floppy disks, cell phones, Blackberries, iPhones, thumb drives, video gaming stations, etc.) can also store tremendous amounts of digital information, including digital video and picture files.

32. As is the case with most digital technology, communications by way of computer

can be saved or stored on the computer. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Further, even if deleted, forensic examination can sometimes recover files and data including deleted picture files.

33. Computers and other digital file storage devices can store the equivalent of thousands of pages of digital information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires the searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks depending on the volume of the data stored, and it would be generally impossible to accomplish this kind of data search on site. Furthermore, I know that smart cell phones (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "synch" with a traditional desktop or laptop computer. The purpose of synching a smart phone to a traditional computer is to back up data that is stored on the phone so that it is not permanently lost if the portable smart phone is lost or damaged. Also, smart phone users may move files off the smart phone and onto a computer to free up storage space on the smart phone. Similarly, computer (e.g., desktop computers, smart phones, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer. For this reason, I am seeking authorization

to seize all computers and digital file storage devices at the **SUBJECT PREMISES**—not any particular computer. Finally, I know that many modern smart cell phones, including Apple iPhones and Samsung-brand phones, can be encrypted by the user using his finger and/or thumbprints to lock and unlock the device. Without the user's prints, the devices are difficult, if not impossible, for law enforcement personnel to unlock. Accordingly, I am requesting that, to the extent law enforcement seizes any smart cell phones or other computers described in Attachment B during a search of the **SUBJECT PREMISES** (described in Attachment A), and if such device(s) feature such encryption, then law enforcement may, while executing the search warrant at the **SUBJECT PREMISES**, depress the finger and/or thumb prints of occupant(s) of the **SUBJECT PREMISES** onto any such encryption feature to attempt to unlock the device.

## SEARCHING COMPUTERS

34. Searching computers for criminal evidence is a highly technical process requiring skill and a properly controlled environment. The search of a computer or computer system is an exacting scientific procedure designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is vulnerable to tampering or destruction, the controlled atmosphere of a laboratory is essential to complete this task. The FBI, Oklahoma City Division ("OCD"), has such a laboratory staffed with certified computer forensic examiners. At least one certified forensic examiner will be present and take custody of any computers and storage media found at the search location. All magnetic storage media will be taken to the FBI OCD lab for analysis. Identical copies of the original storage media will be produced by the assigned forensic examiner so as to maintain the integrity of the original evidence. Due to the fact that child pornography is by its nature contraband, and illegal to possess, making an image of the computer's hard drive and other storage media on site

13

is not a feasible alternative.

## CONCLUSION

35. Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that the following property, evidence, fruits, and instrumentalities of these offenses are located at the **SUBJECT PREMISES**.

36. Based upon the foregoing, I respectfully request that this Court issue a search warrant for the **SUBJECT PREMISES**, described in Attachment A, authorizing the seizure of the items described in Attachment B to this Affidavit.

David A. Garrison
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me this 1st day of February, 2023.

SHON T. ERWIN
United States Magistrate Judge

## ATTACHMENT A
### DESCRIPTION OF PREMISES

1217 Pebble Pond Drive, Norman, Oklahoma 73026-3319 is a one story, single family dwelling located on the east side of Pebble Pond Drive, and to the southwest of Stone Creek Drive. The residence numbers "1217" are printed in black numbers on the brick mail box situated on the curb to the northwest of the **SUBJECT PREMISES**.

A photo of the **SUBJECT PREMISES** is below.



# ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED

1. Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign

commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer

storage.

10. Any and all cameras, film, videotapes or other photographic equipment.

11. Any and all visual depictions of minors engaging in sexually explicit conduct.

12. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

13. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

14. Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. If a smart cell phone or other computer, as described herein, is found that requires access by using a finger or thumbprint to unlock the device, then, while executing the search warrant at the **SUBJECT PREMISES**, a law enforcement officer may press the finger or thumbprint of any occupant of the **SUBJECT PREMISES** onto the device to try to unlock it.